UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE LYNN KOMORA,

               Plaintiff,                       Case No. 2:19-cv-11947
                                             District Judge Terrence G. Berg
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff Denise Lynn Komora brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

(Commissioner) denying her application for Disability Insurance (DI) and

Supplemental Security Income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 18), the Commissioner's cross-motion for summary judgment (ECF No. 19), and the administrative record (ECF No. 9).

### A.    Background and Administrative History

Plaintiff alleges her disability began on May 23, 2013, at the age of 47.  (R. at 167, 183, 201.)  She filed applications for Disability Insurance Benefits (DIB) and SSI on August 2, 2013.  (R. at 103, 167-170, 183-188.)  In her disability report, she lists bipolar disorder and spinal stenosis as limiting her ability to work.  (R. at 205.)  Her applications were denied on November 13, 2013.  (R. at 90-103.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at 110-111.)  On March 24, 2015, ALJ Ramona L. Fernandez held an initial hearing, at which Plaintiff and a vocational expert (VE), Luanne Castilana, testified.  (R. at 48-89.)  On May 29, 2015, ALJ Fernandez issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18-47.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 110-111.)  On April 12, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  However, Plaintiff sought judicial review of that decision (R. at 596-600), and the District Court remanded the matter to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) to "update the medical record; obtain evidence from a medical expert as to whether the claimant's physical impairments

2

meet or medically equal any listed impairments; offer the claimant the opportunity for a new hearing; and issue a new decision" (R. at 601-605). The Appeals Council, in turn, remanded the claim to the ALJ for a new hearing. (R. at 606-609.)

On May 17, 2018, ALJ Fernandez held a second hearing, at which Plaintiff and VE Michele Robb testified. (R. at 558-595.) On June 5, 2018, ALJ Fernandez issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 531-557.)

Plaintiff submitted a request for review of this hearing decision/order, which was denied by the Appeals Council on April 26, 2019. (R. at 512-517.) Thus, ALJ Fernandez's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 28, 2019.

**B.     Plaintiff's Medical History**

The administrative record contains approximately 391 pages of medical records, which were available to the ALJ at the time of her June 5, 2018 decision. (R. at 255-511 [Exhibits 1F-13F], 700-835 [Exhibits 14F-22F].) These materials will be discussed, in detail, as necessary below.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

3

since May 23, 2013, the alleged onset date.  (R. at 536.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease with radiculopathy, cervical radiculopathy, status post right carpal tunnel release, bursitis and impingement of the right shoulder, tendonitis of the right knee, bipolar disorder, and cannabis dependence.  (R. at 536-537.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 537-538.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except: can occasionally climb, stoop, kneel, crouch or balance; cannot crawl or use ladders, ropes, or scaffolds; can frequently grasp or finger; can frequently reach overhead with the right (dominant) extremity; cannot use foot controls; must avoid concentrated exposure to hazards including dangerous moving machinery and work at unprotected heights; is limited to unskilled work with simple instructions and routine changes; cannot engage in team work; can have occasional contact with supervisors and brief and superficial contact with the general public; is restricted to simple decision-making; and cannot have a fixed hourly production rate.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(R. at 538-549.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 549-550.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as hand packager, inspector, and laundry worker.  (R. at 550-551.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 23, 2013.  (R. at 551.)

###   D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

5

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.      Analysis

Plaintiff alleges that the ALJ failed to provide good reasons for discounting

the August 2014 opinion of her treating mental heal provider, Dr. Sarah Zamari,

because: (1) the ALJ's failure to consider that her mental impairments caused her

to not take certain medications constitutes error; (2) it is irrelevant that she sought

reinstatement to her former job; (3) the ALJ's statements that her symptoms may

have increased with the use of marijuana, and that a doctor may express an opinion

based only on sympathy, are purely speculative; (4) the ALJ's statements regarding

Dr. Zamari's Global Assessment of Functioning (GAF)[2] scores are inconsistent

---

[2] As previously explained by this Court:

> The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed. 1994) at 30.  It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *See id*. at 32.  A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood."  *Id*.  A GAF of 41-50 means that the patient has "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  *Id*.  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.  *Id*.

*Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n.1 (E.D. Mich. 2005).  However, "the most recent version of the DSM does not include a GAF rating for assessment

and cannot, alone, be used to discredit a treating physician's assessment; (5) the ALJ's reference to her self-reported ability to perform activities of daily living is misleading, as the references support a finding of disability; (6) the ALJ erred by not discussing most of the factors that must be considered to discount the opinion of a treating physician; and (7) that error was not harmless.  (ECF No. 18, PageID.920-929.)  The Commissioner opposes Plaintiff's motion, asserting that the ALJ provided good reasons, in accordance with 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), to discount Dr. Zamari's opinion.  (ECF No. 19, PageID.939-956.)  For the reasons that follow, the Court should agree with the Commissioner.

### 1. Dr. Zamari's treatment and August 2014 opinion

Dr. Zamari, a psychopharmacologist (R. at 256 [Exhibit 1F]) had been treating Plaintiff for over two years at the time she issued her August 2014 mental residual functional capacity assessment (R. at 272 [Exhibit 1F], 355 [Exhibit 7F]). She also completed a medical source statement in March 2015.  (R. at 438-441 [Exhibit 11].)  Although Plaintiff states in her motion for summary judgment that the ALJ failed to provide good reasons for affording limited weight to Dr. Zamari's opinions (in the plural) (ECF No. 18, PageID.905), she only directly and substantively addresses the August 2014 assessment; so I will do the same.

---

of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, Case No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

The August 2014 mental residual functional capacity assessment is a form with boxes to check rating Plaintiff's ability to perform certain functions, and another page on which to write out answers to specific questions regarding Plaintiff's mental health.  (R. at 355-358 [Exhibit 7F].)  Dr. Zamari checked the box "Markedly Limited" for all functions listed relating to understanding and memory, and sustained concentration and persistence, including "[t]he ability to understand and remember one or two-step instructions," and "[t]he ability to work in coordination with or proximity to others without being distracted by them."  (R. at 355-356 [Exhibit 7F].)  For two of the functions under social interaction, she checked the "Markedly Limited" box, and for three she checked "Moderately Limited," including "[t]he ability to interact appropriately with the general public." (R. at 356 [Exhibit 7F].)  Under adaption, she marked "Markedly Limited" for three of the four functions listed, with the exception of "[t]he ability to be aware of normal hazards and take appropriate precautions," for which she rated Plaintiff "Not Significantly Limited."  (R. at 356 [Exhibit 7F].)

In the portion of the form that requests written elaboration, Dr. Zamari listed Effexor as Plaintiff's only current treatment and medication, and bipolar disorder, mixed, as her Axis I diagnosis, and gave her a GAF score of 50.  (R. at 357 [Exhibit 7F].)  Under the heading "MENTAL STATUS EXAMINATION (Include mental status, attitudes and behavior, stream of thought, thought content, emotional

reactions, sensorium mental capacity including orientation, memory, general

information, judgment, logic, abstract thinking, etc.)," Dr. Zamari wrote: "labile

affect (goes from crying to laughing) hypertalkative, flight of ideas, tangential,

rapid speech[.]"  (R. at 357 [Exhibit 7F].)  Finally, under the heading "DAILY

FUNCTIONING," which asked Dr. Zamari to "[c]omment on [Plaintiff's] ability

to function independently and whether the activity can be maintained on a

sustained basis" by "giving examples of social functioning/activities and interests,"

she stated only: "cannot function independently[.]"  (R. at 357 [Exhibit 7F].)

### 2.     The ALJ gave Dr. Zamari's August 2014 opinion "limited weight"

The ALJ gave Dr. Zamari's August 2014 opinion "limited weight," stating,

in full:

> [O]n August 5, 2014, the claimant reported she [was] pulled over
> recently for driving on [a] suspended license.  It is noted the claimant
> was predominantly depressed, but does not have suicidal thoughts any
> longer.  She was on Effexor, but did not go on the Risperdal as
> prescribed.  She did not want to take anything else.  She had not been
> seeing her therapist because she could not afford the copay.  She was
> diagnosed with bipolar disorder, cannabis dependence, early
> remission, and opiate dependence.  She was again assigned a GAF of
> 55 (Ex 13F/15-18).  The next day, on August 6, 2014, Dr. Zamari
> noted various limitations, symptoms, and signs associated with the
> claimant's ability to do work related activities due to bipolar disorder.
> She opined the claimant is markedly limited in various areas of
> understanding and memory, sustained concentration and persistence,
> social interaction, and adaption.  She further opined the claimant is
> unable to function independently.  Dr. Zamari further noted the
> claimant has financial difficulties and assigned a GAF of 50 (Ex 7F).

The undersigned gives limited weight to the opinion provided by Dr. Zamari because it does not appear she took into consideration the claimant's refusal to take anything other than Effexor, and her refusal to add a mood stabilizer, as recommended (Ex 13F/16). As noted below when the claimant takes medication as prescribed, her condition and symptoms are noted to improve (Ex 10F/26, 13F/21-28). In fact, prior to the opinion, as noted above, the claimant sought reinstatement to a skilled job involving frequent contact and interaction with others. Additionally, the claimant's symptoms "may" have been increased with the use of marijuana. The undersigned notes that although Dr. Zamari indicated the claimant's cannabis abuse was in early remission, test results from another medical source were positive for cannabis during this time period (Ex 12F/26, 30).

In any case, Dr. Zamari's opinion is inconsistent with her own GAF assessment of 55 assigned the previous day (Ex 13F/18), which is intended to be indicative of "moderate" symptoms OR moderate difficulty in social, occupational, or school functioning (DSM-IV, 4th Ed., pg 32). Similarly, her opinion is not consistent with the claimant's self-reported ability to perform activities of daily living independently, as set forth below (Ex 3E, 1F/2, 4, 18, 4F/2, 12F/22, 13F/21). Further, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another or might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(R. at 542-543.)

### 3.  Opinion of treating source

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. §§ 404.1527(b), 416.927(b).[3] The

---

[3] These regulations apply to claims filed before March 27, 2017.

11

regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . [,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 406.

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

S.S.R. 96-8p at *7. In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating

12

physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion.

*Id. See also* 20 C.F.R. § 404.1527(c).[5]

---

[4] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, at *2. Examples of issues reserved to the Commissioner include:

1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
2. What an individual's RFC is;
3. Whether an individual's RFC prevents him or her from doing past relevant work;
4. How the vocational factors of age, education, and work experience apply; and
5. Whether an individual is "disabled" under the Act.

*Id.*

[5] This rule applies to claims filed before March 27, 2017.

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. §§ 404.1257(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).  *See also Betty v. Comm'r of Soc. Sec.*,

14

No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).  "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments."  *Friend*, 375 F. App'x at 551.  But "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule."  *Id.*

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."

15

*Germany-Johnson v. Comm'r of Soc. Sec*, 313 F. App'x 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

### 4.   The ALJ properly discounted Dr. Zamari's August 2014 opinion

For the reasons that follow, the Court should conclude that the ALJ did not

err when she afforded "limited weight" to Dr. Zamari's August 2014 mental

residual functional capacity assessment.

### a.   Cursory nature of opinion

Although the Commissioner fails to make this argument, the Court cannot

review the ALJ's reasoning without considering the cursory nature of Dr. Zamari's

August 2014 opinion.  As described above, the "opinion" is simply a form on

which Dr. Zamari checked boxes rating Plaintiff's functional limitations.  And

where asked on the form to elaborate on her responses, Dr. Zamari failed to do so.

(R. at 355-358 [Exhibit 7F].)  Such opinions are considered weak evidence at best.

*Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016).

Indeed, as stated by the Sixth Circuit in *Ellars v. Comm'r of Soc. Sec.*, 647 F.

App'x 563, 566-67 (6th Cir. 2016):

> Many courts have cast doubt on the usefulness of these forms and
> agree that administrative law judges may properly give little weight to
> a treating physician's "check-off form" of functional limitations that
> "did not cite clinical test results, observations, or other objective
> findings . . . ."  *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011);
> *see also Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL
> 899207, at ---, 14-15 (E.D. Mich. Mar. 3, 2015) (citing cases); *Ashley*

16

*v. Comm'r of Soc. Sec.*, 1:12-cv-1287, 2014 WL 1052357, at *8 n. 6 (W.D. Mich. Mar. 19, 2014) (citing cases).  These cases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence.

Nevertheless, the ALJ provided good (and fairly extensive) reasons supported by substantial evidence for discounting the opinion.  Of the reasons provided, the ALJ's reference to Dr. Zamari's failure to address Plaintiff's noncompliance with her prescription medications and assignment of inconsistent GAF scores, as well as the inconsistency between Dr. Zamari's assessment that Plaintiff "cannot function independently" and Plaintiff's self-reported daily activities, are the most compelling.

### b.   Supportability and consistency of the opinion with the record

The ALJ's reference to Plaintiff's noncompliance with her medications challenges not only the supportability and inconsistency of Dr. Zamari's assessment with the record as a whole, both valid considerations under *Wilson*, 378 F.3d at 544, but also its general insufficiency.  Consistent with the ALJ's statements, the record demonstrates that throughout her treatment with Dr. Zamari, Plaintiff often refused to follow Dr. Zamari's prescription medication recommendations, providing a myriad of excuses for doing so including: that her pills were dropped and crushed by car wheels, that she could not afford her

medication, and that she dropped her pills in a bucket.  (R. at 256-260, 262, 265-267 [Exhibit 1F], 282, 293, 295 [Exhibit 4F], 455 [Exhibit 12F], 485 [Exhibit 13F].)  Further, the record provides at least some indication that, prior to the August 2014 opinion, her mental health improved when she took her medications as prescribed.  (R. at 264, 270 [Exhibit 1F], 303 [Exhibit 4F].)  Yet, despite her firsthand knowledge of Plaintiff's behavior, beyond listing Effexor as her current medication (R. at 357 [Exhibit 7F]), Dr. Zamari failed to support her opinion regarding Plaintiff's functional limitations with any discussion of Plaintiff's prescribed medications or level of compliance therewith.  *See Hernandez*, 644 F. App'x at 475 ("The ALJ properly discussed objective evidence in the record that demonstrates that Hernandez's symptoms lessen when she is compliant with her medication, [and] that she frequently has issues taking the right medication at the right time . . . .").

Plaintiff asserts that the ALJ erred by failing "to consider the inverse: that the severity of [her] mental impairment *caused her* to not take certain medications."  (ECF No. 18, PageID.923.)  But the portions of the record Plaintiff cites in support of her argument only show the excuses Plaintiff provided for noncompliance (*see* R. at 485, 495, 588), not that her mental impairments caused such noncompliance.  Further, neither of the two cases Plaintiff cites in support of her argument involve the same scenario at issue here—an ALJ discounting a

18

treating physician's opinion for failing to discuss the claimant's noncompliance with prescriptions medications.  *See Rogers v. Comm'r of Soc. Sec.*, No. 17-14151, 2019 WL 1102226, at *2-3 (E.D. Mich. Jan. 1, 2019), *report and recommendation adopted*, No. 17-14151, 2019 WL 1099019 (E.D. Mich. Mar. 8, 2019) (ALJ failed to consider whether two-year gap in treatment was symptom of claimant's mental illness); *Robinson v. Comm'r of Soc. Sec.*, No. 18-11835, 2019 WL 1474024, at *4-5 (E.D. Mich. Mar. 18, 2019), *report and recommendation adopted*, No. 18-cv-11835, 2019 WL 1471464 (E.D. Mich. Apr. 3, 2019) (reviewing the ALJ's decision as to whether the claimant's impairments functionally equaled a Listing).

The ALJ also properly discounted Dr. Zamari's opinion on the basis that the GAF score of 50 that she assigned to Plaintiff in the opinion drafted August 6, 2014 (R. at 357 [Exhibit 7F]), could not be reconciled with the GAF score of 55 that she assigned to Plaintiff (R. at 498-501 [Exhibit 13F]) in the treatment note from the day before on which she based her opinion.[6]  While it is true that a GAF score may have little to no bearing on a claimant's social and occupational functioning, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006), as Plaintiff points out (ECF No. 18, PageID.925-926), it was more than reasonable for the ALJ to question Dr. Zamari's failure to explain why she

---

[6] The date of examination listed on the mental residual functional capacity assessment form is August 5, 2014.  (R. at 356, 358 [Exhibit 7F].)

changed her assessment overnight, especially from a GAF that signals the
existence of only moderate functional difficulty, *Edwards*, 383 F.Supp.2d at 924
n.1, to that which denotes serious functional impairment, *id*. This unexplained
discrepancy necessarily challenges the supportability of Dr. Zamari's opinion.
*Wilson*, 378 F.3d at 544. And, though somewhat speculative, it does raise the
distinct possibility, as alluded to by the ALJ, of the patient having unduly
influenced the doctor's independent judgment through persistent requests,
sympathy or to "avoid unnecessary doctor patient tension." (R. at 542-543.) In
any event, the *reason or motivation* for the discrepancy is less important than the
*fact* that it is internally inconsistent. [7]

Further, although a somewhat weaker reason for discounting Dr. Amari's
opinion, the ALJ properly considered the discrepancy between Dr. Zamari's
statement on the form that Plaintiff cannot function independently (R. at 357
[Exhibit 7F]) and Plaintiff's self-reported ability to perform tasks of daily living
independently, which goes to the consistency of the opinion with the record as
whole, as well as the opinion's overall insufficiency. Again, under the heading
"DAILY FUNCTIONING," which asked Dr. Zamari to "[c]omment on

---

[7] *See Stewart v. Comm'r of Soc. Sec.*, No. 13-10436, 2014 WL 1328174, at *3
(E.D. Mich. Mar. 31, 2014) ("The ALJ appears to question Dr. Gupta's judgment
and objectivity for no apparent reason other than the ALJ's own doubts as to
Plaintiff's credibility. *Without more*, these are not 'good reasons' for rejecting the
opinion of a treating physician.") (emphasis added).

[Plaintiff's] ability to function independently and whether the activity can be maintained on a sustained basis" by "giving examples of social functioning/activities and interests," she stated only: "cannot function independently[.]" (R. at 357 [Exhibit 7F].) She inexplicably failed to give any examples, despite the express invitation to do so. But in Plaintiff's self-completed Function Report from September 2013, cited by the ALJ in her decision (R. at 543), Plaintiff reported that she feeds her dogs, prepares her own meals, pays bills, drives a car and can go out alone, and shops for food in the store twice a month. (R. at 213-215 [Exhibit 3E].) Although the above activities may be considered minimal daily functions, *Rogers*, 486 F.3d at 248, and the Function Report was drafted a year before Dr. Zamari's assessment, the mental residual functional capacity form asked Dr. Zamari about daily functioning specifically, and requested that she provide examples, to which she gave only a cursory and entirely unsupported response (R. at 357 [Exhibit 7F]). And the existence of evidence in the record supporting the opposite view, that she could not function independently, should not affect the Court's decision. *Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key*, 109 F.3d at 273). Thus, the Court should find that the ALJ properly discounted Dr. Zamari's opinion on this basis.

The ALJ's additional reasons for discounting Dr. Zamari's opinion—Plaintiff's cannabis use and the fact that Plaintiff sought reinstatement to her previous job (R. at 543)—are far more speculative and less compelling than the previously discussed justifications.  The record demonstrates that throughout her treatment of Plaintiff, Dr. Zamari repeatedly indicated that Plaintiff's cannabis dependence was in remission (R. at 487, 491, 494, 497, 501, 504, 507, 510 [Exhibit 13F]), but that Plaintiff was testing positive for THC during the same time period (R. at 457, 471, 473 [Exhibit 12F]).  However, the Commissioner cites to no evidence in the record that connects Plaintiff's cannabis use to her mental health impairments.  Further, the fact that Plaintiff sought reinstatement to her previous job (R. at 492-493 [Exhibit 13F]) does not demonstrate that she could perform her previous job, although it does imply that she felt well enough to do so.  Without more, these are not "good reasons" for rejecting the opinion of a treating physician.").  Nevertheless, the ALJ provided several good reasons supported by substantial evidence for discounting Dr. Zamari's opinion, as discussed above, and the Court should find on the basis of those reasons and the overall insufficiency of Dr. Zamari's opinion that the ALJ did not err by affording the opinion "limited weight."

### c.      Additional *Wilson* factors

Moreover, contrary to Plaintiff's argument, it cannot be said that the ALJ failed to consider the *Wilson* factors beyond supportability and inconsistency. (ECF No. 18, PageID.927-929.)  From her extensive discussion of Plaintiff's mental health treatment throughout her decision, it is obvious that the ALJ considered the length of the treatment relationship between Plaintiff and Dr. Zamari and the nature of the treatment relationship (R. at 540-543), as well as Dr. Zamari's specialty as a psychiatrist.

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  September 3, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE