UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DENISE LYNN KOMORA**, | **2:19-CV-11947-TGB-APP** |
| Plaintiff, | **HON. TERRENCE G. BERG**<br>**HON. ANTHONY P. PATTI** |
| vs. | **ORDER MODIFYING**<br>**IN PART REPORT AND**<br>**RECOMMENDATION**<br>**(ECF NO. 20),** |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | **DENYING**<br>**PLAINTIFF'S MOTION FOR**<br>**SUMMARY JUDGMENT**<br>**(ECF NO. 18), AND** |
| | **GRANTING THE DEFENDANT'S**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT (ECF NO. 19)** |

This is a Social Security case in which Plaintiff Denise Lynn Komora seeks review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance and Supplemental Security Income benefits. This matter is before the Court on Magistrate Judge Anthony Patti's Report and Recommendation, which recommends that the Court deny Plaintiff's motion for summary judgment, grant Defendant's motion for summary

judgment, and affirm the decision of the Commissioner. ECF No. 20.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections to the Report and Recommendation on September 16, 2020. ECF No. 21. Defendant filed timely responses to those objections. ECF No. 22. A district court must conduct a *de novo* review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Patti's Report and Recommendation, Plaintiff's objections thereto, and Defendant's responses to Plaintiff's objections. For the reasons set forth above, Plaintiff's first and third objections are **OVERRULED**, Plaintiff's second objection is **SUSTAINED**, and the Report and Recommendation is **MODIFIED IN PART**. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 18), **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 19), and the decision of the Commissioner of Social Security is **AFFIRMED**.

2

## I.    BACKGROUND

Plaintiff contends she became disabled on May 23, 2013 when she was 47 years old. ECF No. 9-5, PageID.200. Her disability report lists both bipolar disorder and spinal stenosis as limiting her ability to work. ECF No. 9-6, PageID.239. On August 2, 2013 and December 31, 2014, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits ("SSI"), respectively. ECF No. 9-12, PageID.552. After these applications were denied, Plaintiff filed a timely request for a hearing.

After a hearing on March 24, 2015, where both Plaintiff and a vocation expert, Luanne Castilana, testified, Administrative Law Judge Ramona L. Fernandez issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. ECF No. 9-2, PageID.51. After her request for review by the Appeals Council was denied, Plaintiff sought judicial review of the decision. ECF No. 9-13, PageID.637. The District Court remanded the case with instructions to "obtain an opinion from a medical expert as to whether Komora's impairments met or medically equaled a listing of impairments." ECF No. 18, PageID.906.

On May 17, 2018, Plaintiff and Vocational Expert Michele Robb testified in a new hearing held before ALJ Fernandez. ECF No. 9-12, PageID.598. Once again, ALJ Fernandez determined

Plaintiff was not disabled within the meaning of the Social Security Act. ECF No. 9-12, PageID.591. Subsequently, the Appeals Council again denied Plaintiff's timely request for review. ECF No. 9-12, PageID.552. Therefore, ALJ Fernadez's decision became the Commissioner's final decision. Plaintiff commenced this action on June 28, 2019.

## II.   STANDARD OF REVIEW

### a.   The Social Security Act

The Social Security Act "entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (quoting 42 U.S.C. § 423(d)(1)(A)). "A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Id*. (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486

4

F.3d 234, 241 (6th Cir. 2007). If the Appeals Council denies review, then the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. A federal district court is permitted to conduct a limited judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

The Court's "review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers*, 486 F.3d at 241. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard is less exacting than the preponderance of evidence standard. *Rogers*, 486 F.3d at 241. ("Substantial evidence is ... more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). In exercising review of the Commissioner's decision, this Court does not have to agree with the Commissioner's finding. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Id.* at 854-55.

Finally, "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

### b.  De Novo Review

Plaintiff filed three objections to the Magistrate Judge's Report and Recommendation. Once timely objections to a report and recommendation are filed, the district court must conduct a *de novo* review "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

"The Sixth Circuit's decision to require the filing of objections is supported by sound considerations of judicial economy," and "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v.*

*Arns*, 474 U.S. 140, 147 (1985). As such, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, *Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## III.    ANALYSIS

Plaintiff raises three objections to Magistrate Judge Patti's Report and Recommendation. In her first objection, Plaintiff asserts that "[t]he Magistrate Judge improperly invoked the 'cursory nature' of Dr. Zamari's opinion in his consideration of whether or not the ALJ's provided 'good reason' for discounting this opinion." ECF No. 21, PageID.983. Next, Plaintiff contends "Komora's alleged medication noncompliance was not a good reason for discounting the treating physician opinion." ECF No. 21, PageID.986. Finally, Plaintiff argues that "[t]he Magistrate Judge failed to show that the ALJ otherwise offered sufficiently compelling reasons to discount the opinion of the treating physician." ECF No. 21, PageID.989. Each objection will be addressed in turn.

All three of Plaintiff's objections are centered on the ALJ's decision to not give controlling weight to the opinion of Plaintiff's treating physician, Dr. Zamari. In general, the opinion of a treating

physician—a medical source who regularly treats the claimant—is given more weight than opinions from sources who have examined the claimant but who do not have an "ongoing treatment relationship" with them. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The ALJ must give the opinion of a treating physician "controlling weight" if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527 (d)(2)).[1] If the ALJ does not give the treating physician controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole." *Gayheart*, 710 F.3d at 376 (internal citations removed). Additionally, if a treating-source's opinion is discounted, the ALJ must provide "good reasons" that are "supported by the evidence in the case record." *Id* (quoting Soc. Sec. Rule. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

---

[1] Plaintiff's claim was filed prior to March 27, 2017. Therefore, 20 C.F.R. § 404.1527 applies. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

In addition to ensuring meaningful review, the requirement of "good reasons" exists to help claimants understand the outcome in their cases. *Wilson*, 378 F.3d at 544. This is particularly important "in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). Finally, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4).

The Court may "reverse and remand a denial of benefits, even though 'substantial evidence otherwise supports the decision of the Commissioner,' when the ALJ fails to give good reasons for discounting the opinion of the claimant's treating physician." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 543–46). Even if the ultimate conclusion of the ALJ may be justified based on the record, "[a] failure to follow the procedural requirement 'of identifying the reasons for discount-

ing the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence[.]'" *Id.* (quoting *Rogers*, 486 F.3d at 243).

However, in some circumstances, a failure to provide "good reasons" for discounting the opinion of a treating source might be "harmless error." *Friend*, 375 F. App'x at 551. For example, in *Wilson*, the Sixth Circuit observed that a violation of the procedural requirement may be harmless error if "(1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (quoting *Wilson*, 378 F.3d at 547). Thus, the Court may consider the record as a whole to determine if the ALJ's decision was based on substantial evidence which would make the ALJ's failure to provide "good reason" a harmless error. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (finding the failure to provide an explanation of weight given to a treating source's opinion was harmless error).

### a. First Objection: "Cursory Nature" of Dr. Zamari's Opinion

Plaintiff first argues that Magistrate Judge Patti's consideration of the "cursory nature" of Dr. Zamari's opinion is both legally improper and factually incorrect because the ALJ who decided this case never discussed or raised this argument in her decision. According to Plaintiff, "judicial review of agency action is limited to the reasoning employed by the agency." ECF No. 21, PageID.983. Therefore, the consideration of the "cursory nature" of the form should not be a consideration for this Court because it is an improper post-hoc rationalization of the ALJ's decision.

Plaintiff also contends that the present case differs in meaningful ways from the facts of cases where the Sixth Circuit has found it appropriate to "cast doubt" on the usefulness of check-off forms, specifically *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563 (6th Cir. 2016). According to Plaintiff, Dr. Zamari provided her own objective observations to support her conclusions. ECF No. 21, PageID.984-85 (". . . as she noted in her form that Komora had a 'labile affect' ('goes from crying to laughing'), was 'hypertalkative', had 'flight of ideas', and was 'tangential' with 'rapid speech'"). Lastly, Plaintiff argues that unlike the court in *Ellars*, the ALJ here "never expressly considered the level of explanation provided by Dr.

Zamari" before affording her opinion little weight. ECF No. 21, PageID.985.

"It is a 'foundational principle of administrative law' that judicial review of an agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dept. of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020) (quoting *Michigan v. E.P.A.*, 576 U.S. 743,758 (2015)). The Sixth Circuit has applied this principle to social security decisions, noting "an agency's decision must be affirmed on the grounds noted in the decision." *Berryhill v. Shalala*, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993). "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 508 (quoting *Loral Defense Systems-Akron*, 200 F.3d at 453).

However, the Sixth Circuit has determined that a court's review of the ALJ's opinion "must be based on the record as a whole." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004) (referencing *Heston,* 245 F.3d at 535). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535 (referencing *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)). Therefore, the

key question in the analysis is "whether the Defendant or court de-
velops new arguments, not whether they cite evidence to support
the ALJ's arguments."

This Court must determine whether the Magistrate Judge's
discussion of the treating physician's use of the check-off form rep-
resents a new argument not considered by the ALJ, or if the Report
and Recommendation merely cites additional evidence to support
the ALJ's contention that Dr. Zamari did not provide enough detail
to support her opinion. While Plaintiff is correct that the Report and
Recommendation addresses an argument not specifically made by
the *Commissioner*, a fact which Magistrate Judge Patti acknowl-
edges, a review of the record shows that the ALJ did generally con-
sider the level of detail provided in Dr. Zamari's August 2014 opin-
ion when considering the overall weight to be given to it. For exam-
ple, while the ALJ does not explicitly discuss the "check-off" portion
of the form, her opinion states that she gives limited weight to the
GAF assessments based on the fact that "the clinicians did not
clearly explain the reasons behind their GAF ratings, and the pe-
riod to which the rating apply." ECF No. 9-2, PageID.64. It appears
that in this way, the ALJ did refer to the lack of evidence in the
opinion as a rationale for discounting it. Due to the ALJ's consider-
ation of the lack of extensive explanation, the Court finds that the

13

Magistrate Judge did not rely on the check-off form as a new argument and instead only highlighted it as an additional fact from the record.

Plaintiff's first objection is overruled.

### b. Second Objection: Alleged Medical Noncompliance

Next, Plaintiff argues both the ALJ and Magistrate Judge Patti failed "to take into account the full factual record" when determining whether Plaintiff's medication noncompliance constituted a sufficient reason to discount Dr. Zamari's opinion. ECF No. 21, PageID.986. For example, when discussing how Plaintiff's symptoms improved with Adderall, neither the ALJ or the magistrate judge discuss how a doctor later took Plaintiff off Adderall due to her elevated blood pressure and anxiety. Because the ALJ failed to consider the reasons for noncompliance, Plaintiff argues that the ALJ was not justified in discounting Dr. Zamari's opinion.

Plaintiff's objection concerns the ALJ's decision to discount Dr. Zamari's opinion without consideration of the reasons Plaintiff failed to take medication as prescribed. While the Sixth Circuit has recognized that "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself," the Magistrate Judge's Report and Recommendation correctly notes

14

that the two cases cited by Plaintiff to support her argument address a different scenario than the one currently at issue. *White*, 572 F.3d at 283. In both of the cited cases, the issue was the ALJ's decision to discount the *claimant's* testimony—not that of the treating physician—because of the claimant's noncompliance with taking prescribed medication. *Rogers v. Comm'r of Soc. Sec.*, No. 17-14151, 2019 WL 1102226, at *4 (E.D. Mich. Jan. 17, 2019), report and recommendation adopted, No. 17-14151, 2019 WL 1099019 (E.D. Mich. Mar. 8, 2019) ("It was the ALJ's responsibility to consider the foregoing evidence before relying on Rogers' noncompliance to discredit his testimony."); *Robinson o/b/o D.S.L.R. v. Comm'r of Soc. Sec.*, No. 18-11835, 2019 WL 1474024, at *5 (E.D. Mich. Mar. 8, 2019), report and recommendation adopted, No. 18-11835, 2019 WL 1471464 (E.D. Mich. Apr. 3, 2019) ("[T]he third reason articulated by the ALJ for discounting Plaintiff's allegations of disability is the fact that he purportedly was not 'entirely compliant in taking prescribed medications.'").

However, this does not end our inquiry, because we must consider other cases in this circuit which evaluate an ALJ's failure to consider the reasons for noncompliance when discounting a treating physician's opinion. *See Rowley v. Comm'r of Soc. Sec.*, No. CV 15-11988, 2016 WL 4224974, at *6 (E.D. Mich. July 12, 2016), report and recommendation adopted, No. CV 15-11988, 2016 WL

15

4191739 (E.D. Mich. Aug. 9, 2016) ("Under the circumstances, where the ALJ did not mention (let alone consider) the reasons contained in the record for Rowley's lack of participation in group therapy, the Court finds that her reliance on this fact in discounting the opinion of Rowley's treating physician was error."); *Sneed v. Comm'r of Soc. Sec.*, No. 12-CV-15203-DT, 2014 WL 861525, at *18-19 (E.D. Mich. Mar. 5, 2014) (reversing when ALJ gave little weight to the treating psychiatrist's opinion because she assumed without explaining why that the claimant's failure to comply with medical advice was the reason for her condition); *Black v. Comm'r of Soc. Sec.*, No. 1:13 CV 229, 2013 WL 6837193, at *4 (N.D. Ohio, Dec. 26, 2013), report and recommendation adopted, No. 13-00229 (discussing procedure for proving whether a claimant's mental state played a role in his non-compliance with medical advice).

For example, in *Sneed* the ALJ discounted the opinion of claimant's treating physician, Dr. Stipic, because the medical record failed to support the functional assessment. 2014 WL 861525 at *16. In particular, the ALJ found that when taking all her medication the claimant "had more energy and felt either only episodic irritability or no irritability or sadness at all," which was inconsistent with the limitations outlined in Dr. Stipic's opinion. *Id*. The district court found the ALJ's explanation insufficient because the administrative record provided some evidence that the claimant's failure

to take her medication was due to her mental impairments. *Id*. at *18. Not only did the explanation of the discounted opinion fail to discuss this evidence, the ALJ also failed to discuss the other factors that must be considered when assigning less than controlling weight to a treating physician's opinion, such as the failure to discuss the treating physician's familiarity with the claimant. *Id. See Rogers*, 486 F.3d at 242. The district court remanded the case and ordered the ALJ to reconsider Dr. Stipic's letter because the explanation for discrediting the opinion was insufficient.

In the matter currently before the Court, the ALJ assigned "limited weight" to Dr. Zamari's August 2014 opinion for several reasons including Dr. Zamari's failure to take into consideration the "claimant's refusal to take anything other than Effexor, and her refusal to add a mood stabilizer, as recommended." ECF No. 9-12, PageID.582-83. The ALJ explained, "when the claimant takes medication as prescribed, her condition and symptoms are noted to improve." *Id*. at 583.

As previously discussed, if the ALJ assigns less than "controlling" weight to a treating source's opinion then she must supply the Court and the claimant a sufficient explanation for rejecting the opinion of a long-term treating physician. *Wilson*, 378 F.3d at 544. Here, based on Dr. Zamari's treatment notes, the ALJ determined

17

that when Plaintiff was "compliant" with her medication her conditions and symptoms were less severe than indicated in Dr. Zamari's August 2014 opinion. ECF No. 9-2, PageID.583. Yet, like in *Sneed*, the ALJ fails to explain why it is proper to compare Plaintiff's condition when she was medically "compliant" against the assessment made by Dr. Zamari regarding her limitations. *See* 2014 WL 861525 at *16. This is particularly concerning because the record provides support for the view that Plaintiff's mental impairments may have caused such noncompliance. The record notes that Plaintiff testified that she was "really scared of pills" (ECF No. 9-12, PageID.628), had once dropped her pills in "a bucket" (ECF No. 9-7, PageID.295), stopped taking Rsisperdal because it made her muscles "twitch" (ECF No. 9-11, PageID.534), and experienced "horrendous side effects" including feeling like she was "going to die like Jimi Hendrix" on one medication (ECF No. 9-12, PageID.610-11). The above is not clearly inconsistent with Dr. Zamari's opinion that Plaintiff is impacted by bipolar affective disorder, manic without psychosis, anxiety, and depression, which interfere with Plaintiff's functioning. ECF No. 9-2, PageID.61. Further, even if the ALJ correctly found that Plaintiff's condition was better managed when she was on Adderall, the ALJ failed to discuss Dr. Zamari's notes that even though Adderall was "working pretty well" the Plaintiff was still depressed and "cries a lot" (ECF No. 9-11, PageID.544) and that

18

Plaintiff alleged that she continued to have trouble concentrating while on the medication (ECF No. 9-2, PageID.97). The ALJ should have considered and discussed this evidence before discounting Dr. Zamari's opinion based on Plaintiff's noncompliance with medication.

Therefore, because the ALJ's explanation for discrediting Dr. Zamari's opinion based on noncompliance with medication was insufficient, Plaintiff's second objection is sustained. Notably, the ALJ provided multiple reasons for discounting Dr. Zamari's opinion and for this reason the Court must consider whether the other reasons demonstrate that the decision was based on substantial evidence which would make the ALJ's failure to provide "good reason" a harmless error. *See Heston*, 245 F.3d 528, 536 (6th Cir. 2001).

### c. Third Objection: Other Sufficiently Compelling Reasons

Plaintiff objects to the Report and Recommendation on the ground that it incorrectly concludes that the ALJ provided good reasons for not giving controlling weight to Dr. Zamari's opinion. ECF No. 21, PageID.989. The reasons given by the ALJ for discounting Dr. Zamari's opinion were: (1) Dr. Zamari's "Global Assessment of Function" or "GAF" scores were inconsistent and did not support her opinion that Petitioner had serious symptoms and limitations,

(2) Dr. Zamari's determination that Plaintiff could not function independently was contradicted by Plaintiff's ability to conduct minimal daily functions, (3) Plaintiff's cannabis use impacted her mental health impairments, (4) Plaintiff's attempt to be reinstated at her previous job suggested she was not disabled, and (5) Plaintiff's complaints unduly influenced Dr. Zamari to provide a sympathetic opinion that overstated her disability to avoid patient-doctor tension.

"To be given controlling weight, a treating source opinion must be 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' *and* not be 'inconsistent with other substantial evidence in [the] case record.'" *Vitale v. Comm'r of Soc. Sec.*, Case No. 16-12654, 2017 WL 4296608, at *2 (E.D. Mich. Sept. 28, 2017) (emphasis in original) (quoting *Gayheart,* 710 F.3d at 376). For the reasons that follow, the Court concludes that the ALJ did not err when she afforded "limited weight" to Dr. Zamari's August 2014 opinion because the opinion was inconsistent with other evidence in the record.

First, Plaintiff contends it was not appropriate to discount Dr. Zamari's opinion on the basis that there was a "mere" five-point discrepancy between the two of the GAF scores assigned to Plaintiff. A GAF score is a "clinician's subjective rating of an individual's overall psychological functioning" and it may be utilized by the ALJ

when assessing a claimant's mental residual functional capacity. *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning, while a score of 41 to 50 indicates serious impairment. *Kornecky*, 167 F. App'x at 503. However, the scores are not "raw medical data" and the Sixth Circuit has looked at inconsistency between different doctor's GAF scores as a proper reason for rejecting an opinion. *Kennedy*, 247 F. App'x at 766; *Gribbins v. Comm'r of Soc. Sec. Admin.*, 37 F. App'x 777, 779 (6th Cir. 2002).

The ALJ discounted Dr. Zamari's opinion because she assigned two different GAF scores a day apart without explanation. While Dr. Zamari's August opinion assigned Plaintiff a GAF score of 50, the previous day she assigned Plaintiff a GAF assessment of 55. ECF No. 9-12, PageID.583. This is a rational reason for discounting the August opinion as the numbers were not only inconsistent a day apart without explanation, but the shift also changed the indication of Plaintiff's functional limitation from moderate to severe. Plaintiff's assertion that, with limited exceptions, her GAF score was consistently between 45 and 50 is unavailing as the concern is not the overall consistency with the record, but why the score could change—a change which resulted in a different indication of functional limitations—within a day. Therefore, it was reasonable

21

for the ALJ to question Dr. Zamari's failure to explain the inconsistent scores. Accordingly, the ALJ provided at least one "good reason" for discounting Dr. Zamari's opinion.

Next, Plaintiff argues that the ALJ should not have discounted the weight afforded to Dr. Zamari's opinion based on the inconsistency with Plaintiff's own assessment of her functional abilities. An ALJ may decline to give a treating source opinion "controlling weight" if it is not well-supported and is inconsistent with the other evidence in the case record. 20 C.F.R. § 404.1527(c). However, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend*, 375 F. App'x at 552.

To support the decision to discount Dr. Zamari's August opinion based on its inconsistency with claimant's self-reported ability to perform daily activities, the ALJ cites to a list of exhibits,[2] which demonstrate that Dr. Zamari's opinion is "not consistent with the

---

[2] The Court finds that the format of the ALJ's explanation, providing reference to exhibits without specifically explaining each one, is not in and of itself a deficiency. The ALJ in *Vitale v. Commissioner of Social Security* also addressed a treating physician's opinion with citations to exhibits. The court concluded that the "ALJ met its obligation to provide good reasons for giving less weight to [the physician's] opinion." 2017 WL 4296608, at *2.

claimant's self-reported ability to perform activities of daily living independently." ECF No. 9-12, PageID.582-84. While Dr. Zamari asserted that Plaintiff could not "function independently" (ECF No. 9-8, PageID.393), the exhibits the ALJ points to contradict this opinion. Among other things, the function report filled out by claimant notes that she was able to feed her dogs (ECF No. 9-6, PageID.247), take care of her personal needs and grooming without special reminders (ECF No. 9-6, PageID.248), not require help taking medication (ECF No. 9-6, PageID.248), prepare her own meals on a daily basis (ECF No. 9-6, PageID.248), she is able to drive a car, go out to stores, pay bills and handle a savings account (ECF No. 9-6, PageID.249), and she does not need someone to accompany her when she goes out (ECF No. 9-6, PageID.250). These inconsistencies are also concerning in light of Dr. Zamari's failure to provide "examples of social functioning/activities and interests," despite being expressly invited to do so on the form. ECF No. 9-8, PageID.393. *See Vitale*, 2017 WL 4296608, at *2 ("Based on *Plaintiff's own testimony*, the ALJ found that Plaintiff has no restriction in activities of daily living and that she completes household tasks without difficulty.") (emphasis added).

While the Court acknowledges that the ALJ could have provided an elaboration on the exhibits rather than referencing them

generally, the Court is still unable to conclude that the ALJ improperly discounted Dr. Zamari's opinion on this basis. Here, unlike the case in *Gayheart* where "the reviewing court could not determine what the problem with the treating physician's opinion was," the Court can assess by referring to the exhibits the contradictions that the ALJ highlights. *See Vitale*, 2017 WL 4296608, at *3 (referencing *Gayheart*, 710 F.3d at 377). The evidence of contradiction in the case record is highlighted, which makes it clear where any subsequent reviewers can turn in order to find support for the ALJ's decision to discount the opinion. *See Wilson*, 378 F.3d at 544 (referencing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)).

The other reasons provided by the ALJ for discounting Dr. Zamari's opinion are less compelling. Plaintiff contends that the discussion of the use of cannabis and its potential impacts on her mental health are speculative and the Court agrees. The ALJ focused on a discrepancy between Dr. Zamari's conclusion that Plaintiff's cannabis dependence was in remission and office records from Dr. Siddiqui which indicate that Plaintiff tested positive for cannabis. ECF No. 9-12, PageID.583. While the ALJ points to this inconsistency, there is no evidence, description, or explanation that connects Plaintiff's cannabis use to her mental health impairments. Therefore, the potential inconsistency regarding cannabis use was not a "good reason" for discounting Dr. Zamari's opinion.

The ALJ also discounted Dr. Zamari's opinion based on the fact that Plaintiff sought reinstatement to her previous job, which required "frequent contact and interaction with others." ECF No. 9-12, PageID.583. While Plaintiff's own assessment of her functionality may have been different from Dr. Zamari's, the ALJ gives no explanation as to why Plaintiff's determination should win out over a treating physician. *Friend*, 375 F. App'x at 552. Additionally, the ALJ does not cite to any evidence in the record that demonstrates that Plaintiff could in fact perform her previous job—just that she wanted to do so. Without more, the ALJ failed to provide sufficient "good reason" to discount Dr. Zamari's opinion based on Plaintiff's effort to be reinstated at her previous job.

Finally, Plaintiff contends that there is no evidence to support the ALJ's discussion of the possibility that Dr. Zamari may have reached her opinion based on sympathy for Plaintiff rather than her medical expertise. ECF No. 9-12, PageID.583. While the opinion notes that "it is difficult to confirm the presence of such motives," the Court finds the suggestion entirely unsupported. The ALJ seems to assert that undue influence is a possibility because Dr. Zamari's opinion "departs substantially from the rest of the evidence in the record," but then provides no explanation or citation to the record that would support the statement that her opinion is in fact such a substantial departure from the evidence. ECF No. 9-12,

25

PageID.583. *See Bergschwenger v. Comm'r of Soc. Sec.*, 2012 WL 4009916, at *12 (E.D. Mich. Aug. 20, 2012), report and recommendation adopted, No. 11-11752, 2012 WL 4009909 (E.D. Mich. Sept. 12, 2012) ("While the ALJ found that the remainder of Dr. Ahmad's opinions to likely have been issued out of sympathy, because they were so inconsistent with the medical evidence of record, the ALJ does not actually cite any particular evidence that was so inconsistent with [the treating physician's] opinions."). Because the ALJ provided no evidence or explanation of Dr. Zamari's alleged sympathy motive, the ALJ failed to provide "good reason" for discounting Dr. Zamari's opinion based on possible undue influence.

Despite these less than compelling explanations, the Court finds that the discrepancy in GAF scores and the inconsistency between Dr. Zamari's August opinion and claimant's self-reported abilities, provide sufficient evidence to support the ALJ's decision to accord less than controlling weight to Dr. Zamari's opinion.

Further, even acknowledging the less compelling arguments presented by the ALJ and the fact that the ALJ could have articulated more specific "good reasons," any failures here amount to harmless error. A court may conclude that an insufficient discussion of "good reasons" is harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commis-

26

sioner adopts the opinion of the treating source or makes find-
ings consistent with the opinion; or (3) where the Commis-
sioner has met the goal of § 1527(d)(2)—the provision of the
procedural safeguard of reasons—even though she has not
complied with the terms of the regulation.

*Friend*, 375 F. App'x at 551 (internal quotation marks omitted)
(quoting *Wilson*, 378 F.3d at 547).

The few incomplete sentences Dr. Zamari provides at the bot-
tom of the August Mental Residual Functional Capacity Assess-
ment do not negate the fact that the opinion was cursory: it largely
consisted of a check-form report, in several places she did not in-
clude any remarks or comments despite being requested to do so
(ECF No. 9-8, PageID.392), and even when Dr. Zamari did add min-
imal commentary she declined to provide examples and gave con-
clusory statements (ECF No. 9-8, PageID.393). *See Hernandez v.
Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016);
*Ellars*, 647 F. App'x at 566-67. The Court acknowledges that Dr.
Zamari provided slightly more than just checked boxes, unlike the
aforementioned cases. However, the less than thirty words Dr. Za-
mari offers in explanation can hardly be said to provide convincing
support for the opinions expressed.

While the above-described problems in Dr. Zamari's opinion
may not amount to a "patently deficient" treating source opinion, it
does appear that the Commissioner has satisfied the third situation

27

because the Court and the claimant are able to reference the exhibits and conflicting GAF scores to understand why Dr. Zamari's opinion was not given controlling weight. *See Heston*, 245 F.3d 528, 536 (6th Cir. 2001). The Court finds that the record taken as a whole provides adequate and sufficiently specific reasons for the weight given to Dr. Zamari's opinion. Taken together, it is clear that whatever errors the ALJ's opinion suffered in failing to set out with clarity the "good reasons" for giving less weight to Dr. Zamari's opinion, were harmless.

As noted earlier, it is clear the ALJ could have provided more detail in the decision and the Court would encourage including such detail to ensure that "claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell*, 177 F.3d at 134). However, here, the ALJ's reasoning did not fall below the minimum standard of analysis required. Accordingly, Plaintiff's objection will be overruled.

## CONCLUSION

After a *de novo* review of the record and the materials submitted by the parties, **IT IS HEREBY ORDERED** that Plaintiff's first

28

and third objections are **OVERRULED**, Plaintiff's second objections is **SUSTAINED**, and the Report and Recommendation is **MODIFIED IN PART**. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**. Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**, and the decision of the Commissioner of Social Security is **AFFIRMED**.

  **SO ORDERED.**

Dated: March 31, 2021  s/Terrence G. Berg
           TERRENCE G. BERG
           UNITED STATES DISTRICT JUDGE